## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| D.B. individually and on behalf of A.B. a minor,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and BLUE CROSS BLUE SHIELD of ILLINOIS.<br><br>Defendants. | No. 1:21-cv-00098-BSJ<br><br>**MEMORANDUM DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT** |

On March 9, 2023, the Court heard argument on Plaintiff and Defendants' respective motions for summary judgment and took the matter under advisement. Brian S. King appeared for Plaintiff D.B.; Rebecca R. Hanson and Nathanael J. Mitchell appeared for Defendant Blue Cross Blue Shield of Illinois ("BCBS"); and Christopher J. Martinez appeared for Defendants United Healthcare Insurance Company and United Behavioral Health (collectively "UBH"). The Court having reviewed the briefs submitted by the parties, the supplemental authority cited by parties, the administrative record filed in this action, and the relevant law, and having heard oral argument from counsel, and for reasons discussed more fully below, hereby DENIES IN PART Plaintiff's motion for summary judgment,

- 1 -

GRANTS BCBS's motion for summary judgment, and DENIES UBH's motion for summary judgment. In summary, the Court concludes that BCBS's denial of residential treatment center benefits to the Plaintiff under the applicable benefit plan was reasonable under the arbitrary and capricious standard of review. The Court further concludes that, on this record, BCBS has not violated the Mental Health Parity and Addiction Equity Act (the "Parity Act"). Applying the same standard, and given the failures identified below in UBH denials of coverage, the Court concludes that D.B.'s benefit claims must be remanded to UBH for further consideration consistent with this Decision and Order. Relatedly, Plaintiff's claim that UBH violated the Parity Act is mooted by such remand.

## BACKGROUND

This action concerns a dispute under ERISA as it relates to the mental health care that D.B.'s minor son, A.B., received at Triumph Youth Services ("Triumph"), a residential treatment center ("RTC"), from July 7, 2018, to June 5, 2020. Essentially, the issue is whether the care A.B. received is covered under the applicable medical benefit plans available to D.B. or whether, consistent with ERISA, UBH's denial of coverage was reasonable.

Plaintiff D.B.'s son, A.B., endured chronic issues with various ailments, including depression, anxiety, lack of focus, and extreme hyperactivity. Behaviorally, he experienced school suspensions, was isolated socially, destroyed property, acted out in anger, engaged in self harm, and had suicidal ideation. (*See* UNITED_D.B_000768; HCSC_0002544.) By the time he reached the seventh grade,

his problems with depression, anxiety, and acting out in anger increased.  (*See id.*)
On July 7, 2018, A.B. was admitted to Triumph, a licensed residential treatment
facility located in Box Elder County Utah, that provides sub-acute inpatient
treatment to adolescents with mental health, behavioral, and/or substance abuse
problems.

D.B.'s employer sponsored a benefits plan with Defendant BCBS (the "BCBS
Plan").  During the period when A.B. was receiving care at Triumph, D.B. was a
member/participant in the BCBS Plan and A.B. was a beneficiary under the BCBS
Plan.  Also, during the period when A.B. was receiving care at Triumph, D.B.
participated in another health plan that was insured by Defendant
UnitedHealthcare Insurance Company and administered by Defendant United
Behavioral Health (the "United Plan").  As a dependent of D.B., A.B., was also a
beneficiary under the United Plan.  D.B. sought coverage for A.B.'s care at Triumph
under both plans.

Both plans purport to provide some benefits for the diagnosis and treatment
of mental illnesses, including inpatient benefits at the RTC level of care.  (*See*
HCSC_0000031; HCSC_0000315; UNITED_D.B_002486-87; UNITED_D.B_002641;
UNITED_D.B_002334.)   Whether such coverage is available depends on the
definitions specific to each plan and a determination, under the specific terms of
each plan, that the care was "medically necessary." (*See, e.g.,* UNITED_D.B_002328
(providing that "Covered Health Service(s)" are those that are "Medically

Necessary").)  Although UBH conducted a review to determine whether A.B.'s care
at Triumph was medically necessary, BCBS did not conduct any such review.

### A.  BCBS's Claim Review

Rather than engage in a medical necessity review, BCBS instead focused its
claim evaluation on the issue of whether Triumph offered "24 hour onsite nursing
service for patients with mental illness and or substance use disorder," which was a
BCBS Plan requirement for any RTC.  (*See* HSCS_0000031, HSCS_0000315.)  After
much delay by BCBS, and following an appeal by D.B., on May 22, 2020, BCBS
issued a denial letter that stated that D.B.'s claims for coverage for A.B.'s treatment
at Triumph were denied for the following reason:

> Per the [Employer's Health Care Benefit Program], the facility
> [Triumph] does not meet the definition of a residential treatment
> center due to no 24-hour nursing presence onsite. No reimbursement is
> available for the services rendered on July 7, 2018 through March 31,
> 2020. The claims are in the process of being adjusted to deny
> consistently as not a benefit of the contract.

(*See* HCSC_0003655-61.)  No further appeals were pursued by D.B.

### B.  UBH's Claim Review

After some delay, UBH also denied D.B.'s claim for coverage for A.B.'s
treatment at Triumph.  UBH based its denial on a lack of medical necessity for
A.B.'s treatment at an RTC.  Specifically, in its initial denial dated May 6, 2020,
UBH informed D.B. that:

> Your child is being treated for problems with his mood, thoughts
> and behaviors. He is impulsive and oppositional at times, with
> defiant behaviors. He is not prescribed any psychiatric medications
> but is cooperative and participating in his treatment. Your request
> was reviewed by a doctor. We have denied the medical services

requested after talking about your child's symptoms and treatment with the facility designee and the clinical director at the facility.

The criteria are not met because: your child does not need the care provided in [a] Residential Treatment Center setting. Your child could be treated in a less intensive Level of Care.

In your case, your child is cooperative and participating in his treatment. Your child is medically stable and doing better. Your child can control himself better. Your child has a more stable mood. Your child is not acting on every impulse. Your child is not feeling like harming himself or others. Your child is able to look after his day to day needs. Your child does not have clinical issues 24 hour monitoring in a residential setting. Your child has no mental health issues preventing treatment in a less intensive setting. Your child has a safe place to live and the support of family. You can consider starting your child on medications in a lower level of care.

(*See* UNITED_D.B_000061-62.)

As part of its evaluation, UBH asserts that it conducted a "peer-to-peer" review with a Triumph designee. As reported by UBH, the designee indicated, among other things, that A.B. had not had any self-harming or assaultive behaviors since being enrolled at Triumph, that Triumph's clinical staff was composed of social workers and did not include any medical personnel, that A.B. was not seeing an outpatient psychiatrist or taking any medications, and that the primary reason for continued residential treatment was to work on emotional regulation and improved coping skills. (*See* UNITED_D.B_001988-92.) This review was not disclosed in the May 6, 2020, denial letter, however.

In connection with UBH's evaluation of her claim, D.B. had presented UBH with a "Specialty Psychological Evaluation" of A.B. conducted by Dr. Megan McCormick, Ph.D., NCSP. (*See* UNITED_D.B_000765-813; HCSC_0002543-2589.) In that assessment, which involved over nine separate testing sessions and was

conducted over a period of 28 days in July/August 2019, Dr. McCormick made the following diagnoses of A.B.: Autism Spectrum Disorder; Persistent Depressive Disorder with anxious distress and intermittent major depressive disorder; and General Anxiety Disorder. (*See* UNITED_D.B_000806; HSCS_0002582.) Further, Dr. McCormick noted that A.B. has demonstrated symptoms of depression since age ten and was continuing to endorse them, and that A.B. also endorsed suicidal ideation in interviews and questionnaires. (*See* UNITED_D.B_000807; HSCS_0002583.) Among other things, she noted that A.B. required immersive, intensive interventions and explicit training to begin to develop more age-appropriate skills, communication skills, and emotional coping skills, and that she was recommending that A.B. "continue in a long-term therapeutic program to provide the additional time he needs to internalize and generalize the skills he has just started to learn." (*See* UNITED_D.B_000807; HSCS_0002583.) Dr. McCormick further recommended that A.B. have "24/7 support with direct specialized instruction and immediate feedback with his social interactions and developing social skills and problems solving." (*See* UNITED_D.B_000807; HSCS_0002583.) UBH's May 6, 2020, denial letter made no reference to Dr. McCormick's psychological evaluation or to any of the medical records recommending A.B.'s continued medical necessity for long-term residential treatment. (*See* UNITED_D.B_000061-63.)

On June 30, 2020, D.B. submitted a level-two appeal to UBH. (*See* UNITED_D.B_000411-419.) D.B. argued that UBH failed to provide her with

'

information regarding how the medical criteria was applied and failed to explain its determination as to how A.B. could be treated at a lower level of care when prior treatments at that level had been ineffective.  (*See* UNITED_D.B_000414.)  D.B again informed UBH of the psychological evaluation and recommendations prepared by Dr. McCormick and other similar medical records recommending A.B.'s continued medical need for RTC treatment.  (*See* UNITED_D.B_000417.)

On July 27, 2020, the denial of D.B.'s claim was upheld by UBH.  The reviewer concluded that the "requested service did not meet the Optum Level of Care Guidelines required to be followed in the member's behavioral health plan benefits ... [that A.B.] was stable from a medical and mental health standpoint ... [and that A.B.] did not require 24-hour care."  (*See* UNITED_D.B_000072-73.)

Months later, on December 4, 2020, a "retroactive" appeal sought by D.B. was similarly denied.  This reviewer explained that that A.B.'s "behavior was in better control," that he was "engaged in recovery" and "did not need the 24 hours monitoring provided in a residential setting," and that AB's care could have occurred with outpatient services.  (*See* UNITED_D.B_003125-26.)  Like the first denial, neither of these later reviews referenced Dr. McCormick's assessments or any other records recommending A.B.'s continued treatment at Triumph.

## **DISCUSSION**

Before the Court engages in any analysis of the denial of benefits to an ERISA plan participant, it must determine the standard of review to be applied.  In ERISA actions, there are two:  a *de novo* standard, which is the default standard to

be applied, or the arbitrary and capricious standard,[1] which is to be applied if the plan at issue confers upon the plan administrator the discretionary authority to determine benefit eligibility. *See Foster v. PPG Indus.*, 693 F.3d 1226, 1231 (10th Cir. 2012); *see also Mark M. v. United Behavioral Health*, No. 2:18-cv-18, 2020 WL 5259345, at *7 (D. Utah Sept. 30, 2020) (citing cases). Because the administrators of both the BCBS Plan and United Plan enjoy such discretionary authority, the Court will review the benefit denials under the arbitrary and capricious standard.[2]

A. *The BCBS Denial Claim*

It is undisputed that the BCBS Plan covers treatments and services that are set out as covered services under its terms. As it concerns coverage for treatment at a RTC, and as relevant for this discussion, the BCBS Plan provides coverage for treatment at RTCs that meet the following definition:

---

[1]      "Arbitrary and capricious review of the reasonableness of a benefits decision considers if it (1) was the result of a reasoned and principled process, (2) is consistent with any prior interpretations by the plan administrator, (3) is reasonable in light of any external standards, and (4) is consistent with the purposes of the plan." *D. K. v. United Behavioral Health*, No. 21-4088, 2023 WL 3443353, at *8 (10th Cir. May 15, 2023) (quotation omitted).

[2]      Plaintiff argues that the Defendants' alleged procedural irregularities (that is, their delay in issuing denials and/or and the citation of different medical necessity guidelines or the assertion of different rationales for denial) support application of a *de novo* standard. (*See* ECF No. 50 at 18-21.) As for the BCBS claims, because the delays were inconsequential in context and it is undisputed that the denial letters included, among others, the lack of 24-hour onsite nursing coverage as a ground for denial, these were not procedural irregularities that would support a *de novo* review. *See Mark M.*, 2020 WL 5259345, at *9 (noting that including multiple denial reasons in denial letter was not a serious procedural error where letter also contained correct denial reason). Similarly, as to the UBH claims, while Plaintiff asserted that she had to provide medical records to UBH on many separate occasions before a denial decision was reached, there is no claim that the appeal was not handled in a timely manner under the applicable United Plan deadlines. Plaintiff's second argument, that *de novo* review should be applied because UBH's denial letter and its appeal decision used different medical necessity guidelines, lacks any judicial support; Plaintiff cites no case that supports this position. Accordingly, the Court will also apply the arbitrary and capricious standard of review to the UBH claims.

> [A] facility setting offering a defined course of therapeutic intervention and special programming in a controlled environment which also offers a degree of security, supervision, structure and is licensed by the appropriate state and local authority to provide such service.
>
> It does not include half-way houses, supervised living, wilderness programs, group homes, boarding houses or other facilities that provide primarily a supportive environment and address long-term social needs, even if counseling is provided in such facilities. Patients are medically monitored with 24 hour medical availability and 24 hour onsite nursing service for patients with Mental Illness and/or Substance Use Disorder.

(HCSC_0000031.)

BCBS main argument in support of summary judgment is that it properly denied coverage for A.B.'s treatment at Triumph because Triumph does not offer 24-hour onsite nursing services. Although D.B. challenges the actual need for 24-hour onsite nursing at a RTC, she does not dispute that Triumph does not offer such services and she has not presented any evidence that it does. In its denials, BCBS clearly informed D.B. that it was denying the claim, because, among other things, Triumph did not offer 24-hour onsite nursing care. Because Triumph did not satisfy the BCBS Plan's unambiguous requirement of 24-hour onsite nursing care, BCBS's coverage decision was reasonable and summary judgment must issue in favor of BCBS.

### B. The BCBS Parity Act Claim

D.B.'s Parity Act argument is that the BCBS Plan requirement that a RTC must provide 24-hour onsite nursing services creates a more restrictive limitation on mental health treatment than it does on analogous medical/surgical treatments. This is so, D.B. argues, because the BCBS Plan does not expressly define the

analogous medical treatments—skilled nursing facilities or inpatient rehabilitation facilities—with an express 24-hour onsite nursing requirement.[3] (*See* ECF No. 50, at 31.)

Although BCBS concedes that the BCBS Plan definition of a skilled nursing facility does not expressly include 24-hour nursing requirements, it asserts that the requirement is nevertheless present. Specifically, BCBS points out that the BCBS Plan requires that any skilled nursing facility (which includes inpatient rehabilitation facilities) must be "duly licensed by the appropriate governmental authority," all of which, in turn, require 24-hour onsite nursing. (*See* HCSC_0000032.) This appears to be a correct statement. For example, Utah law specifically requires 24-hour nursing services. *See, e.g.,* U.A.C. R432-150-5(2) (requiring that "[a] skilled level of care facility must provide 24 hour licensed nursing services"); U.A.C. R432-150-4(2)(a) ("'Skilled Nursing Care' means a level of care that provides 24 hour inpatient care to residents who need licensed nursing supervision."). And BCBS is equally correct that federal law—Medicare—also contains the 24-hour nursing requirement. *See* 42 U.S.C. § 1395i-3(b)(4)(C)(i) ("Except as provided in clause (ii), a skilled nursing facility must provide 24-hour licensed nursing service which is sufficient to meet nursing needs of its residents

---

[3]      To establish a Party Act claim it has been recognized that a plaintiff must: (1) identify a plan subject to the Parity Act that provides both medical/surgical benefits and mental health benefits; (2) identify a treatment limitation for mental health benefits in the plan that is more restrictive than medical/surgical benefits; and (3) establish that the mental health benefit that is so limited is in the same classification as the medical/surgical benefit with which it is being compared. *See M.S. v. Premera Blue Cross,* 553 F. Supp. 3d 1000, 1012 (D. Utah 2021) (citations omitted).

and must use the services of a registered professional nurse at least 8 consecutive hours a day, 7 days a week."). Plaintiff does not dispute these facts.

In arguing for summary judgment on Plaintiff's Parity Act claim, BCBS cites the case of *J.W. v. Bluecross Blueshield of Texas*, No. 1:21-CV-21, 2022 WL 2905657 (D. Utah July 22, 2022). In that case, plaintiffs alleged a nearly identical Parity Act violation because the plan at issue required residential treatment centers to have "24 hour onsite nursing service" but did not expressly impose the same requirement on skilled nursing facilities. *Id.* at *5. In dismissing the claim, the court noted, that the plan required skilled nursing facilities be "[l]icensed in accordance with state law" or "Medicare or Medicaid eligible," and that "both Utah law and Medicare require a skilled nursing facility to provide 24 hour nursing service." *Id.* (citing 42 U.S.C. § 1395i-3(b)(4)(C)(i) and U.A.C. R432-150-5(2)). In dismissing the Parity Act claim, the court concluded that "at least as this provision is applied to Utah facilities, there is no disparity with regard to the 24-hour onsite nursing services requirement between residential treatment centers and skilled nursing facilities." *Id.*

Although *J.W.* dealt with the issue on a motion to dismiss, the same result necessarily follows here. D.B. has not established that BCBS's 24-hour onsite nursing requirement for potential RTC coverage presents a more restrictive limitation when compared to skilled nursing treatment benefits available under the BCBS Plan. That 24-hour requirement, while not express, is still present under

Utah and federal law and, therefore, under the BCBS Plan.[4]   Because D.B. has not presented any proof of any disparity in treatment, D.B.'s Parity Act claims must be dismissed.[5]  *See J.W.*, 2022 WL 2905657, at *5-6.

## C. The UBH Denial Claim

A recent Tenth Circuit decision provides direct guidance on the resolution of the parties' respective summary judgment motions as to UBH's denial of coverage concerning A.B.'s treatment at Triumph.  *See D.K. v. United Behavioral Health*, No. 21-4088, 2023 WL 3443353 (10th Cir. May 15, 2023).

---

[4]      Notably, Plaintiff does not dispute the fact that Utah Law requires 24-hour onsite nursing at a skilled nursing facility.  And Plaintiff has not presented any evidence that the 24-hour onsite requirement for skilled nursing facilities is any different in any other state.

[5]      The Court notes that the continued reliance on purportedly analogous or comparable treatments that has become the touchstone of any Parity Act violation analysis seems misplaced.  A person in need of medical/surgical care in an inpatient setting has demands that are simply not applicable to a person who is seeking mental health care at a RTC.  The functions to be performed in each setting are not the same at all.  Treatment after surgery is qualitatively different than the therapeutic treatment required to treat a mental health issue.  For example, a person being treated in a rehabilitation facility center for partial paralysis or a skilled nursing facility after major surgery may need 24-hour nursing care to assist with breathing and other core functions, or he/she may need 24-hour nursing care for mobility assistance or to manage medications, or perhaps even to communicate.  Thus, it is important that 24-hour onsite nursing care be available in that setting.  Yet the same is not true in a RTC setting.  As these many cases establish, the persons seeking treatment at a RTC are young, often school aged.  They are mobile and otherwise physically healthy individuals, who simply do not need 24-hour nursing care.  Allowing a benefit plan to impose a 24-hour onsite nursing requirement on a RTC facility—a requirement not imposed by state licensing agencies or by the federal government—serves no one.  Rather, it appears to only serve one of two goals.  Either it will increase the cost of RTC care, which, in turn, will force insurers to raise rates and plan participants to pay more in premiums to secure services that are not necessary for that type of care; or the requirement is simply used as a means to limit coverage for RTC care because so few facilities will have the financial ability, or even the practical ability, to provide 24-hour onsite nursing services when such care is not needed.  In either case, plan participants are on the losing end.  They either overpay for plan benefits that are unnecessary for the treatment that they seek, or they pay for, and expect, benefits that the plan has effectively eliminated.  And in the latter case, the nursing requirement borders on outright discrimination against mental health treatment.  Whether this 24-hour nursing requirement, which unquestionably reduces access to a RTC for mental health care, imposes a more restrictive treatment limitation in violation of the Parity Act perhaps should be determined by looking at mental health treatment, not as an analogue to some other treatment, but on its own, with an eye toward what are the best practices for a RTC and the young people and their families who appropriately seek care at those facilities.

Although Plaintiff has presented several arguments in support of her motion, considering the holding of *D.K.*, only one needs to be addressed here: D.B.'s argument that UBH, in its denials, did not specifically address the report and recommendations of A.B.'s treatment providers, specifically Dr. McCormick. In *D.K.* the Tenth Circuit held that, under ERISA, UBH (the plan administrator in *D.K.* and the same plan administrator here) was required "to engage with and address" such recommendations in its denial letters. *See D.K.*, 2023 WL 3443353, at *8. Specifically, the Tenth Circuit stated that:

> United's reviewers were not required to defer to the treating physician opinions provided. However, their duties under ERISA require them to address medical opinions, particularly those which may contradict their findings. This is the core of meaningful dialogue: if benefits are denied and the claimant provides potential counterevidence from medical opinions, the reviewer must respond to the opinions. This back-and-forth is "how civilized people communicate with each other regarding important matters." *Booton*, 110 F.3d at 1463. Interpreting United's legal requirements to be anything less is unreasonable. In refusing to address the treating physician opinions presented to it which could have confirmed A.K.'s need for benefits, United acted arbitrarily and capriciously.

*D.K.*, 2023 WL 3443353, at *12. Thus, as determined by the Tenth Circuit, a plan administrator "cannot shut [its] eyes to readily available information" that could confirm a beneficiary's entitlement to benefits, and, if it does so, it has acted "arbitrarily and capriciously." *Id.* at *8 (cleaned up).

Nowhere in any of its denials did UBH address the recommendations of Dr. McCormick that A.B. continue to receive RTC care. In her appeals, D.B. referenced Dr. McCormick's recommendations, yet UBH never meaningfully engaged in any dialogue with D.B. concerning its denial of coverage by referencing Dr. McCormick's

opinions.   Notably, the medical opinions offered in *D.K.*, *i.e.*, that the plan beneficiary was on a "slow but steady course" and needed "to continue the work she is doing and to continue to consolidate gains," *see id.* at *11, are similar to the recommendations of Dr. McCormick here.   (*See* UNITED_D.B_000807 (recommending that A.B. "continue in a long-term therapeutic program to provide the additional time he needs to internalize and generalize the skills he has just started to learn").)

Applying *D.K.*, this Court concludes that UBH acted arbitrarily and capriciously in not engaging with the medical opinions of A.B.'s treating professionals.   *See D.K.*, 2023 WL 3443353, at *12; *see also David P. v. United Healthcare Insurance Co.*, 564 F. Supp. 3d 1100, 1117-20 (D. Utah 2021) (recognizing that United, as administrator, abused its discretion by, among other things, failing to fairly engage with the patient's treating professionals' opinions or medical records).   Accordingly, UBH's motion for summary judgment is denied.

Unlike *D.K.*, however, this Court will not award benefits but will instead order remand of this case to UBH for a renewed evaluation of D.B.'s claim that is consistent with this Decision and Order and the decision in *D.K.*, and that will address, specifically, the many arguments in support of coverage that have been advanced by D.B. in her appeals and in this litigation.   Having directed remand, the Court will deny UBH's and D.B.'s motions for summary judgment on D.B.'s Parity Act claims as moot, subject to renewal, if necessary, at a later stage of these proceedings.   *See, e.g., Theo M. v. Beacon Health Options*, No. 2:19-cv-00364, 2022

WL 4484517, at *17 (D. Utah Sept. 27, 2022) (recognizing that if a remand is ordered "disputes under the Parity Act are simply not ripe for decision").

IT IS THEREFORE ORDERED that Defendant United Healthcare Insurance Company's and Defendant United Behavioral Health's Motion for Summary Judgment (ECF No. 49) is DENIED; and

IT IS FURTHER ORDERED that Defendant Blue Cross Blue Shield of Illinois's Motion for Summary Judgment (ECF No. 48) is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff D.B.'s Motion for Summary Judgement (ECF No. 50) is DENIED IN PART and GRANTED IN PART; and

IT IS FURTHER ORERED that this matter is REMANDED to Defendants United Healthcare Insurance Company and United Behavioral Health for further consideration consistent with this Decision and Order.

DATED this 31st day of may 2023.

BY THE COURT:

Hon. Bruce S. Jenkins
United States District Judge