IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| D.B., individually and on behalf of A.B., a minor,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED BEHAVIORAL HEALTH, and BLUE CROSS BLUE SHIELD OF ILLINOIS,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:21-cv-00098-JNP-CMR<br><br>Chief District Judge Jill N. Parrish |

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* Plaintiff D.B. seeks recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) (the "ERISA claim"). ECF No. 106. In June of 2023, Judge Jenkins remanded the action to Defendants United Healthcare Insurance and United Behavioral Health ("Defendants") after finding that Defendants' claim denials were arbitrary and capricious.[1] ECF No. 71. On remand, Defendants upheld the denial of benefits.

Presently before the court are the parties' post-remand cross-motions for summary judgment. ECF Nos. 104, 106. Having considered the parties' arguments and the record, Plaintiff's motion for summary judgment is granted, and Defendants' motion for summary judgment is

---

[1] Judge Bruce S. Jenkins entered the summary judgment order in this case. On March 8, 2024, the case was reassigned to this court. ECF No. 73.

denied.

## FACTUAL AND PROCEDURAL BACKGROUND

**I.      Pre-Remand Factual Background**

The court recites, in a slightly abridged form, the facts as stated in the June 2023 Order. *See D.B. on behalf of A.B. v. United Healthcare Ins. Co.*, No. 1:21-CV-00098-BSJ, 2023 WL 3766102, at *1–3 (D. Utah June 1, 2023).

This action concerns a dispute under ERISA as it relates to the mental health care that Plaintiff D.B.'s minor son, A.B., received at Triumph Youth Services ("Triumph"), a residential treatment center ("RTC"), from July 7, 2018, to June 5, 2020. In short, the issue is whether the care A.B. received is covered under the applicable medical benefit plans available to D.B. or whether, consistent with ERISA, UBH's denial of coverage was reasonable.

Plaintiff D.B.'s son, A.B., endured chronic issues with various ailments, including depression, anxiety, lack of focus, and extreme hyperactivity. Behaviorally, he experienced school suspensions, was isolated socially, destroyed property, acted out in anger, engaged in self-harm, and had suicidal ideation. *See* UNITED_D.B_000768. By the time he reached the seventh grade, his problems with depression, anxiety, and acting out in anger increased. *See id.* On July 7, 2018, A.B. was admitted to Triumph, a licensed residential treatment facility located in Box Elder County, Utah, that provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

During the period when A.B. was receiving care at Triumph, D.B. participated in a health plan that was insured by Defendant UnitedHealthcare Insurance Company and administered by Defendant United Behavioral Health (the "United Plan"). As a dependent of D.B., A.B. was also

a beneficiary under the United Plan. D.B. sought coverage for A.B.'s care at Triumph under the United Plan.

The United Plan purports to provide some benefits for the diagnosis and treatment of mental illnesses, including inpatient benefits at the RTC level of care. *See* UNITED_D.B_002486-87; UNITED_D.B_002641. Whether such coverage is available depends on the definitions specific to the plan and a determination, under the specific terms of the plan, that the care was "medically necessary." *See, e.g.*, UNITED_D.B_002328 (providing that "Covered Health Service(s)" are those that are "Medically Necessary").

### A.    UBH's Claim Review

After some delay, UBH denied D.B.'s claim for coverage for A.B.'s treatment at Triumph. UBH based its denial on a lack of medical necessity for A.B.'s treatment at an RTC. Specifically, in its initial denial dated May 6, 2020, UBH informed D.B. that:

> Your child is being treated for problems with his mood, thoughts and behaviors. He is impulsive and oppositional at times, with defiant behaviors. He is not prescribed any psychiatric medications but is cooperative and participating in his treatment. Your request was reviewed by a doctor. We have denied the medical services requested after talking about your child's symptoms and treatment with the facility designee and the clinical director at the facility.
>
> The criteria are not met because: your child does not need the care provided in [a] Residential Treatment Center setting. Your child could be treated in a less intensive Level of Care.
>
> In your case, your child is cooperative and participating in his treatment. Your child is medically stable and doing better. Your child can control himself better. Your child has a more stable mood. Your child is not acting on every impulse. Your child is not feeling like harming himself or others. Your child is able to look after his day to day needs. Your child does not have clinical issues 24 hour monitoring in a residential setting [sic]. Your child has no mental health issues preventing treatment in a less intensive setting. Your child has a safe place to live and the support of family. You can consider starting your child on medications in a lower level of care.

*See* UNITED_D.B_000061–62. The denial letter stated that the guideline used for the decision was the American Academy of Child and Adolescent Psychiatry (AACAP) Child and Adolescent Service Intensity Instrument Version 4.1 for Level 5 (the "CASII Guidelines"). UNITED_D.B_000061.

As part of its evaluation, UBH asserted that it conducted a "peer-to-peer" review with a Triumph designee. As reported by UBH, the designee indicated, among other things, that A.B. had not had any self-harming or assaultive behaviors since being enrolled at Triumph, that Triumph's clinical staff was composed of social workers and did not include any medical personnel, that A.B. was not seeing an outpatient psychiatrist or taking any medications, and that the primary reason for continued residential treatment was to work on emotional regulation and improved coping skills. *See* UNITED_D.B_001988–92. This review was not disclosed in the May 6, 2020, denial letter, however.

In connection with UBH's evaluation of her claim, D.B. had presented UBH with a "Specialty Psychological Evaluation" of A.B. conducted by Dr. Megan McCormick, Ph.D., NCSP. *See* UNITED_D.B_000765–813. In that assessment, which involved over nine separate testing sessions and was conducted over a period of 28 days in July and August 2019, Dr. McCormick made the following diagnoses of A.B.: Autism Spectrum Disorder; Persistent Depressive Disorder with anxious distress and intermittent major depressive disorder; and General Anxiety Disorder. *See* UNITED_D.B_000806. Further, Dr. McCormick noted that A.B. has demonstrated symptoms of depression since age ten and was continuing to endorse them and that A.B. also endorsed suicidal ideation in interviews and questionnaires. *See* UNITED_D.B_000805. Among other things, she noted that A.B. required immersive, intensive interventions and explicit training to begin to develop more age-appropriate skills, communication skills, and emotional coping skills,

and that she was recommending that A.B. "continue in a long-term therapeutic program to provide the additional time he needs to internalize and generalize the skills he has just started to learn." *See* UNITED_D.B_000807. Dr. McCormick further recommended that A.B. have "24/7 support with direct specialized instruction and immediate feedback with his social interactions and developing social skills and problems solving." *See* UNITED_D.B_000807. UBH's May 6, 2020, denial letter made no reference to Dr. McCormick's psychological evaluation or to any of the medical records recommending A.B.'s continued medical necessity for long-term residential treatment. *See* UNITED D .B_000061–63.

On June 30, 2020, D.B. submitted a level-two appeal to UBH. *See* UNITED_D.B_000411–419. D.B. argued that UBH failed to provide her with information regarding how the medical criteria was applied and failed to explain its determination as to how A.B. could be treated at a lower level of care when prior treatments at that level had been ineffective. *See* UNITED_D.B_000414. D.B. argued that UBH relied too heavily on "acuity and crisis stabilization over effective treatment of the patient's underlying condition," allegedly evidenced by the reviewer's citations to "numerous indicators of stabilization." UNITED_D.B_000415. D.B. argued that A.B. "was only cooperative, participating in his treatment, not acting on every impulse, and doing better overall *because he was receiving treatment in the residential setting*." *Id.* D.B again informed UBH of the psychological evaluation and recommendations prepared by Dr. McCormick and other similar medical records recommending A.B.'s continued medical need for RTC treatment. *See* UNITED_D.B_000417. Finally, D.B. argues that the initial denial's reliance on the fact that A.B. was not prescribed any psychiatric medication was problematic because D.B. argues specialized therapy, rather than medication, was "clinically indicated." *Id.*

On July 27, 2020, the denial of D.B.'s claim was upheld by UBH. The reviewer concluded that the "requested service did not meet the Optum Level of Care Guidelines required to be followed in the member's behavioral health plan benefits." UNITED_D.B_000072. The reviewer continued:

> "The member was stable from a medical and mental health standpoint. He was able to take care of his needs. He had family support. He was able to safely go on trips and visits with his family. He did not require 24-hour care."

*Id.*

Months later, on December 4, 2020, a "retroactive" appeal sought by D.B. was similarly denied. The decision was also based on "Optum MH Residential Treatment Level of Care coverage guidelines" (the "Optum LOC Guidelines"). UNITED_D.B_003126. This reviewer explained that that A.B.'s "behavior was in better control," that he was "engaged in recovery" and "did not need the 24 hour monitoring provided in a residential setting," and that AB's care could have occurred with outpatient services. *See* UNITED_D.B_003126–27. Like the first denial, neither of these later reviews referenced Dr. McCormick's assessments or any other records recommending A.B.'s continued treatment at Triumph.

## II.     The Court's Remand Order

In Judge Jenkin's Order, the court faulted UBH for not addressing Dr. McCormick's recommendations that A.B. continue to receive RTC care. In her appeals, D.B. referenced Dr. McCormick's recommendations repeatedly, yet the court found that UBH never meaningfully engaged in any dialogue with D.B. concerning Dr. McCormick's opinions. *See* UNITED_D.B_000807 (recommending that A.B. "continue in a long-term therapeutic program to provide the additional time he needs to internalize and generalize the skills he has just started to learn"). Applying *D. K. v. United Behavioral Health*, the court concluded that UBH acted

arbitrarily and capriciously in not engaging with the medical opinions of A.B.'s treating professionals. *See* 67 F.4th 1224, 1236–42 (10th Cir. 2023).

The court ordered the case be remanded to UBH "for a renewed evaluation of D.B.'s claim that is consistent with this Decision and Order and the decision in [*D. K.*], and that will address, specifically, the many arguments in support of coverage that have been advanced by D.B. in her appeals and in this litigation." ECF No. 71 at 14.

### III.    Post-Remand Redetermination

On July 12, 2023, D.B. filed a post-remand level one appeal. UNITED_D.B._REMAND_000001. In the appeal, D.B. discussed A.B.'s time at Triumph, including the various assessments he completed and his behavior and interactions with other students and staff. UNITED_D.B._REMAND_000006. D.B. raised, for example, how in a July 8, 2018 Mental Health Intake Assessment, A.B. indicated that he had daily thoughts about suicide. *Id.* She also cited a November 2018 report that noted that while A.B. was doing well in the program, his therapist feared "that if treatment were to cease at this time he will return home to the same behaviors he had before." UNITED_D.B._REMAND_000007. In addition, D.B. noted that after over a year of treatment, A.B. continued to engage in harmful behavior. D.B. referenced an Incident Report from October 11, 2019, in which A.B. "threw a dog dish in another youths [sic] face." UNITED_D.B._REMAND_000006. Later, in November 2019, A.B sprayed chemicals on the "crotch area" of another student. UNITED_D.B._REMAND_000007. However, by the conclusion of his time at Triumph in June 2020, D.B. noted that A.B. had made significant improvement, which, according to D.B., demonstrated that A.B.'s treatment was medically necessary. UNITED_D.B._REMAND_000009.

D.B. then argued in the appeal that the Optum LOC Guidelines also prove that A.B.'s treatment was necessary. *Id.* Whereas the pre-remand denials stated that A.B. was stable from a mental health standpoint, was able to take care of his needs, and did not require 24-hour care, D.B. contended that A.B.'s condition was "entirely unmanageable at a less intensive level of care." UNITED_D.B._REMAND_000012. D.B. pointed to the various evaluations A.B. completed, which described his reported suicidal ideation and his failed visits to outpatient therapists.

On August 11, 2023, UBH issued a three-page denial of this first post-remand appeal. UNITED_D.B._REMAND_000044. The reviewer stated that they reviewed the Optum Case Notes, the letter of appeal, the medical record, Dr. McCormick's evaluation, and other relevant appeals materials. *Id.* The reviewer then stated that 24-hour residential treatment was not needed because A.B.'s "actual psychiatric symptoms were not intensive at admission and throughout the entirety of care" at Triumph. UNITED_D.B._REMAND_000045. Most of the denial letter consisted of conclusory language such as "You were cooperative and receptive to receiving help" or "You were keeping yourself safe." *Id.* But while the denial letter did not explicitly cite to the record, it did at times reference events and notes from the record. For example, it noted that:

- "You were noted to be doing well (and particular note is made of your solid school performance)." *Id.*

- "Other than some very mild oppositionality initially, you settled in, in short time." *Id.*

- "You were not self-injurious or aggressive. At most, throughout 22 months of care, there were only several episodes of behavioral acting out – mostly 'horse play', one episode of spraying cleaner on a peer, and on[e] instance of throwing a dog bowl at a peer." *Id.*

The denial also referenced Dr. McCormick's evaluation. The denial stated that the evaluation "was especially important in determining that you had a diagnosis of Autism Spectrum Disorder, which helped to explain many of your various challenges. This was done a little over a year after you had entered the program. Of note, her assertion that you needed 24-hour residential treatment simply did not match the level of psychiatric acuity that was present at admission and throughout your treatment." *Id.*

The denial letter concluded: "You could have addressed all your treatment needs in the community setting, in a Mental Health Partial Hospitalization Program setting, while also utilizing other relevant community resources." UNITED_D.B._REMAND_000046. It did not specifically note which guidelines it relied on.

On October 20, 2023, D.B. then filed a second level appeal. UNITED_D.B._REMAND_000054. In this second appeal, D.B. pointed out several supposed deficiencies with the first post-remand denial. First, she argued that the denial failed to reference any specific terms of the Plan. UNITED_D.B._REMAND_000055. Second, D.B. argued that the denial did not meaningfully engage with Dr. McCormick's forty-seven-page assessment. *Id.* Third, D.B. argued that the denial did not meaningfully engage with the arguments advanced in support of coverage in D.B.'s appeal letter. UNITED_D.B._REMAND_000056. Finally, D.B. argued that the denial did not cite to any medical records or provide any reasoning for its conclusions that A.B. was keeping himself safe or had no actual intensive psychiatric symptoms. UNITED_D.B._REMAND_000057–58. For example, while UBH maintained that A.B. was not self-injurious or aggressive, D.B. questioned UBH's characterizations of the incidents it relied on to support that conclusion. UNITED_D.B._REMAND_000058.

UBH issued its final post-remand denial letter on December 20, 2023. UNITED_D.B._REMAND_000059. The four-page denial applied for the first time the Child and Adolescent Level of Care Utilization System and Child and Adolescent Service Intensity Instrument guidelines (the "CALOCUS-CASII Guidelines"). UNITED_D.B._REMAND_000061; ECF No. 105 at 8. After briefly introducing some of A.B.'s behavioral problems, the denial responded to the reports of suicidal ideation by noting that ideation "without plan or intent to act constitute[s] a risk of harm Level of 2." UNITED_D.B._REMAND_000061. It then engaged with Dr. McCormick's evaluation. *Id.* It first highlighted Dr. McCormick's recommendations that A.B. stay in the "long-term residential treatment program or some similar residential program or therapeutic boarding school that meets his needs." *Id.* The denial letter then responded to Dr. McCormick's conclusions by stating:

> The psychologist's reported concerns about member's safety, at the time of her evaluation which was approximately one year into his residential/therapeutic school admission, the member had already shown significant stability and no evidence of safety concerns throughout this time period. The psychologist referenced behaviors that were no longer active concerns.

UNITED_D.B._REMAND_000062.

The denial letter then shifted to a CALOCUS-CASII Guidelines assessment. In the accompanying rationale, the reviewer engaged in a detailed analysis of A.B.'s time at Triumph. Though the reviewer did not specifically cite to the record, she did reference many specific details from the record. *See* UNITED_D.B._REMAND_000063–65. The reviewer noted that "[t]hroughout his entire treatment episode – almost two years, the member was always engaged in his treatment, attended all therapy sessions and activities, and addressed all academic expectations." UNITED_D.B._REMAND_000063. She noted that there were few behavior issues, barring the horseplay, the chemical incident, and the dog bowl incident, and that there was a lack

of evidence for other issues. *Id.* She also noted that A.B. taking two ten-day treatments sponsored by the facility and spending a number of nights off-campus with his parents undercut the need for 24-hour residential care. UNITED_D.B._REMAND_000064.

Referencing the CALOCUS-CASII guidelines, the reviewer continued to assert that there were no issues with aggression and that A.B. was never unsafe, among other conclusions. *Id.* She noted that "the member was not so much receiving intensive residential psychiatric treatment as he was obtaining academic assistance and working on developmental concerns and catch up . . . ." *Id.* She noted he was never assessed by a psychiatrist and that while "[h]e did clearly benefit from being at the facility," his "condition did not meet the guidelines for coverage of psychiatric care in an intensive 24 hour around the clock residential treatment setting." *Id.*

## IV.    Current Proceedings

On March 7, 2024, Plaintiff moved for the case to be re-opened. ECF No. 72. The court granted the motion on March 29, 2024. ECF No. 80. On May 30, 2025, Defendants moved for summary judgment. ECF No. 104. That same day, Plaintiff filed a cross-motion for summary judgment. ECF No. 106.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, when both parties move for summary judgment in an ERISA proceeding focusing on a benefit denial claim, the parties have effectively "stipulated that no trial is necessary" and thus "summary judgment is merely a vehicle for deciding the case." *See LaASMAR v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 796 (10th Cir. 2010) (citation omitted).

11

In these instances, "the factual determination of eligibility for benefits is decided solely on the administrative record, and the non-moving party is not entitled to the usual inferences in its favor." *Id.* (citation omitted).

When a claim administrator holds discretionary authority to determine benefits eligibility, a reviewing court applies "a deferential standard of review, asking only whether the denial of benefits was arbitrary and capricious." *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (citations omitted). An administrator with discretionary authority may delegate its discretion to a third party, whose denial decisions are then also reviewed under an arbitrary and capricious standard. *Geddes v. United Staffing Alliance Employee Medical Plan*, 469 F.3d 919, 926–27 (10th Cir. 2006).

The parties dispute whether this deferential standard of review applies. Defendants argue that the court should continue to apply it in these post-remand proceedings. ECF No. 105 at 2. Plaintiff suggests the court should review these post-remand denials *de novo*. ECF No. 106 at 21. Following other courts in this circuit, the court applies the deferential standard of review to these post-remand proceedings. *See Torrey v. Qwest Commc'ns Int'l, Inc.*, 838 F. Supp. 2d 1201, 1209 (D. Colo. 2012) (applying the arbitrary and capricious standard post-remand); *McMillan v. AT&T Umbrella Benefit Plan No. 1*, No. 14-CV-717-GKF-PJC, 2017 WL 3478482, at *4 (N.D. Okla. Aug. 14, 2017) (same).

Claim denials are upheld on arbitrary and capricious review if "reasonable and supported by substantial evidence." *D. K. v. United Behavioral Health*, 67 F.4th 1224, 1235 (10th Cir. 2023) (citing *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006)); *see also David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1308 (10th Cir. 2023) (quoting *Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1358 (10th Cir. 2009)) ("We define substantial

12

evidence as 'such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision-maker. Substantial evidence requires more than a scintilla but less than a preponderance.'"). A coverage decision lacks substantial evidence if it rejects and fails to explain why it disagrees with opinions from a plaintiff's medical providers, *D. K.*, 67 F.4th at 1238–42, if it fails to sufficiently explain its conclusions with supportive reasoning and citations to the record, *id.* at 1242–43, or if it "is not grounded [on] any reasonable basis[,]" *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1193 (10th Cir. 2007) (citations and internal quotation marks omitted), *abrogated on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

A coverage decision's reasonableness is further judged on whether it resulted from a "reasoned and principled process." *D. K.*, 67 F.4th at 1236 (quoting *Flinders*, 491 F.3d at 1193). To avoid having their claim denials found arbitrary and capricious, ERISA administrators are obliged to engage in a "full and fair review" of benefits claims and appeals, considering the insured's records and sufficiently explaining their decision. *See* 29 C.F.R § 2560.503-1(h)(2)(iii)–(iv). "ERISA denial letters play a particular role in ensuring full and fair review[,]" so "[a] district court [is] correct to focus its review on the denial letters" when evaluating whether an insurer conducted a full and fair review. *D. K.*, 67 F.4th at 1239.

To avoid a finding that a denial of benefits was arbitrary and capricious, ERISA administrators must engage in "reasonable, 'meaningful dialogue'" in the denial letters they issue. *Id.* at 1240. Meaningful dialogue requires denial letters to be "comprehensive and include requests for additional information, steps claimants may take for further review, and specific reasons for the denial." *Id.* at 1239 (citing 29 C.F.R. § 2560.503-1(f)(3); 29 C.F.R. § 2560.503-1(h)(3), (4)). In accordance with ERISA's objective of facilitating meaningful dialogue regarding benefits

denials, the court will limit its review of Defendants' denials to the information conveyed to Plaintiff in the prelitigation and post-remand claims and appeals process. *See Ian C. v. UnitedHealthcare Ins. Co.*, 87 F.4th 1207, 1226 (10th Cir. 2023) ("Finally, United insists that its reviewers' internal notes are properly a part of the administrative record for Ian C.'s claim. Our recent disposition in *D. K.* forecloses this argument. . . . Only the rationales articulated to the beneficiary in the denial letter are eligible for review[.]").

## DISCUSSION

By ordering Plaintiff's claims be remanded to Defendants, Judge Jenkins provided Defendants a second chance at engaging in a full and fair review of the claim, in addition to clear remand instructions on how to cure prior deficiencies. *See* ECF No. 71 at 14. Despite this renewed opportunity, Defendants' post-remand denials, while more detailed than the pre-remand denials, are rife with issues such that the court again finds them to be arbitrary and capricious. The court reviews each post-remand denial letter in turn before addressing the issue of attorney's fees and Plaintiff's prior Parity Act claim.

## I.    Defendants' First Post-Remand Denial

Reviewing the first post-remand denial letter, it is quickly apparent that the contents of the letter do not meet the standards the Tenth Circuit has set out in *D. K.* and *David P. See D. K. v. United Behav. Health*, 67 F.4th 1224, 1236–43 (10th Cir. 2023); *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1309–15 (10th Cir. 2023).

First, the letter almost exclusively contains conclusory statements without any "reasoning and citations to the record." *D. K.*, 67 F.4th at 1242. For example, the letter states that A.B. was "thinking clearly" or that A.B.'s "actual psychiatric symptoms were not intensive at admission and throughout the entirety of care at Triumph." UNITED_D.B._REMAND_000045. When making

14

these claims, the reviewer provided no reasoning and not a single citation. Without reasoning and citations to the medical record, a claimant cannot be sure the reviewer even looked at their record when making such conclusory health statements.

Admittedly, there were a few instances in which the reviewer appeared to reference A.B.'s medical record and history, though still without citation. For example, the reviewer states that A.B. "settled in, in short time," and "quickly began following all rules and expectations." *Id.* However, without including any actual reasoning or evidentiary support to back up these more specific conclusions, they remain conclusory. This is especially true given Plaintiff, throughout the appeals process, pointed to significant evidence demonstrating otherwise. In Plaintiff's initial post-remand appeal, she asserts early on that A.B. "was still engaging in harmful behavior and continued to pose a danger to those around him after over a year of treatment" at Triumph. UNITED_D.B._REMAND_000006. This assertion was backed up with a "maximum severity" Incident Report from October 11, 2019, which showed that A.B. was violent and resistant to corrections and instructions from staff members—seemingly far from being settled in and quickly following all rules and expectations. *Id.* Defendants' medical reviewers can, of course, come to the opposite conclusion, but they must explain their reasoning and back up the reasoning with evidentiary support. "In other words, given that United was provided with extensive information, its conclusory responses without citing the medical record[] did not constitute a full and fair review." *D. K.*, 67 F.4th at 1242; *see also David P.*, 77 F.4th at 1312–13 (rejecting similarly vague and unsupported conclusions).

Furthermore, in the few instances in which the reviewer did include a level of reasoning after a conclusion (though still without actual citations), the reasoning was at times weak, contradictory, or potentially unsupported. The reviewer, for example, states that A.B "[was] not

15

self-injurious or aggressive." Yet, the reviewer then explains this conclusion by saying, "[a]t most, throughout 22 months of care, there were only several episodes of behavioral acting out – mostly 'horse play', one episode of spraying cleaner on a peer, and on[e] instances of throwing a dog bowl at a peer." UNITED_D.B._REMAND_000045. In the court's view, this explanation raises more questions than it settles. The "only several" instances of aggression included throwing a dog bowl at another's face and spraying enough cleaning solution on a peer's "crotch area" to cause an "on fire" burning sensation and pain. UNITED_D.B._REMAND_000006–7. Again, while the medical reviewers may reasonably come to a different conclusion based on the same administrative record, reasoning that is not properly supported by the record fails to sufficiently explain a denial.

Plaintiff also finds fault with the reviewer's level of and quality of engagement with Dr. McCormick's evaluation. The full extent of the reviewer's response to the evaluation was stating that Dr. McCormick's evaluation "was especially important in determining that [A.B.] had a diagnosis of Autism Spectrum Disorder, which helped to explain many of [his] various challenges. This was done a little over a year after [he] had entered the program. Of note, [Dr. McCormick's] assertion that [A.B.] needed 24-hour residential treatment simply did not match the level of psychiatric acuity that was present at admission and throughout [his] treatment." UNITED_D.B._REMAND_000045.

The court does not purport to set a minimum word count required when responding to a plaintiff's medical provider's opinion. But the court is hard pressed to accept that, as a qualitative reality, a two-sentence response to a forty-seven-page report satisfies the meaningful engagement requirement, especially when one of those two sentences is conclusory in nature and lacks any reasoning or citations to the record. As the Tenth Circuit has made clear, it is not that a plan administrator "must seek out all treating care givers' opinions found in a claimant's medical

16

records and explain whether or not the plan administrator agrees with each of those opinions and why." *David P.*, 77 F.4th at 1312. Rather, when an opinion constitutes "reliable evidence from the claimant," reviewers cannot "shut their eyes to readily available information." *D. K.*, 67 F.4th at 1237. Thus, "if United arbitrarily refused to credit and effectively 'shut their eyes' to the medical opinions of [A.B.'s] treating physicians, it acted arbitrarily and capriciously." *Id.* Importantly, when a reviewer has a duty to address medical opinions, especially "those which may contradict their findings," their response must adhere to the requirements that they engage in "reasonable, 'meaningful dialogue.'" *Id.* at 1240, 1241. Thus, the courts finds that a reviewer who responds in a perfunctory and conclusory manner is also effectively shutting their eyes and depriving claimants the meaningful dialogue they are due.

While all of these issues are more than sufficient to conclude the letter was an arbitrary and capricious denial, the court identifies more. First, the denial letter did not refer to the "specific plan provisions on which the determination is based," as is required by ERISA regulations. 29 C.F.R. § 2560.503-1; *see D. K.*, 67 F.4th at 1243. Second, the reviewer did not identify what guidelines were used in making that determination. And finally, the reviewer did not adhere to Judge Jenkin's order, which laid out clear, specific instructions for the remand review process. Specifically, Judge Jenkins ruled that Defendants must "address, specifically, the many arguments in support of coverage that have been advanced by D.B. in her appeals and in this litigation." ECF No. 71 at 14. The court can identify several arguments that were left unaddressed. The letter did not address how any medical guideline criteria were applied, D.B.'s concern about the reliance on acuity and stabilization, D.B.'s argument that A.B. was doing better because the Triumph treatment was effective, D.B.'s argument that a denial based on a lack of a psychiatric medication prescription was problematic, A.B.'s suicidal ideation, D.B.s' analysis of the Optum LOC Guidelines, and

D.B.'s argument that because previous attempts at outpatient therapy failed, A.B.'s condition was unmanageable at a less intensive level of care. These failures alone could support the finding that the denial was arbitrary and capricious. *See Colby v. Assurant Emp. Benefits*, 818 F. Supp. 2d 365, 384 (D. Mass. 2011) ("In light of USIC's failure to abide by, as well as its continued resistance to, the Order in *Colby I,* this Court now awards Dr. Colby retroactive LTD benefits . . . ."); *Aisenberg v. Reliance Standard Life Ins. Co.*, 718 F. Supp. 3d 480, 490 (E.D. Va. 2024) ("As a general rule, on the remand of a case after appeal, the agency from which appeal is taken must comply with the mandate of the court and obey the directions therein without deviation. . . . This directive, which applies full-well to Defendant, was not followed. . . . [D]isregarding the Court's directives may — standing alone — amount to an abuse of discretion . . . .").

Thus, the first denial letter does not pass muster and was arbitrary and capricious.

## II.    Defendants' Second and Final Post-Remand Denial

The second denial letter also failed to satisfy the procedural requirements of ERISA as described by the Tenth Circuit. Specifically, the second denial relied on a new guideline in making its determination, failed to follow Judge Jenkin's remand instructions, and did not meaningfully respond to Dr. McCormick's evaluation.

The first major issue with the second, and final, denial letter is that the reviewer relied on the CALOCUS-CASII guidelines in making the determination. As was the case here, claimants often explicitly rely on the relevant guidelines used by plan administrators when crafting their arguments in the pre-litigation and litigation process. In this case, Plaintiff used the Optum LOC Guidelines in the post-remand appeals process. This decision was sensible because Defendants had relied on those same guidelines in their second and third pre-remand denials. The only instance in which Defendants used a different guideline, the CASII Guidelines, was in the very first pre-

18

remand denial letter, but as noted, the CASII Guidelines were abandoned in favor of the Optum LOC Guidelines throughout the rest of the appeals process.

The court considers the use of a new analytical framework as akin to Defendants raising a new denial rationale after the fact, and by the time the post-remand appeals process began, the Tenth Circuit had clearly held that post hoc denial rationalizations were improper. *See D. K.*, 67 F.4th at 1241 ("Plan administrators must provide claimants with the rationales for denial prior to litigation . . . ."); *see also* David P., 77 F.4th at 1315–16 (holding before the final denial letter was issued that "remand, however, does not 'provide the plan administrator the opportunity to reevaluate a claim based on a rationale not raised in the administrative record,' and not previously conveyed to Plaintiffs" (internal citations removed)). Ultimately, allowing a plan administrator to justify a denial on new guidelines after consistently relying on a different set of guidelines for years would disadvantage claimants, potentially allowing administrators "interminable opportunities to search for alternative grounds to deny benefits." *Spradley v. Owens-Illinois Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1142 (10th Cir. 2012).

Defendants argue that "Plaintiff has known that A.B.'s treatment at Triumph does not satisfy the CALOCUS/CASII guidelines since receiving" the first pre-remand denial letter. ECF No. 118 at 15. Here, Defendants appear to attempt to erase any distinction between two separate guidelines, the CASII Guidelines and the CALOCUS-CASII Guidelines, despite spending almost four pages within their motion for summary judgment delineating the three guidelines used in the various denial letters. *See* ECF No. 105 at 9–12. The CALOCUS-CASII Guidelines, which per Defendants' own admission are a new "unified single instrument" developed *after* the Optum LOC and CASII guidelines, were only explicitly used in the final post-remand denial letter. ECF No. 105 at 9. It is thus unclear why Defendants assert without qualification that "the parties also briefed

19

these guidelines in the previous summary judgment proceeding." ECF No. 118 at 115. All of their provided citations point to briefing that discussed the CASII guidelines, not the CALOCUS-CASII guidelines. *See* ECF No. 49 at 5–14; ECF No. 50 at 19; ECF No. 58 at 13–14.

As the court understands it, and as insinuated by Defendants' briefing, there is a high degree of overlap between the CASII and CALOCUS-CASII Guidelines. But even if the two are functionally the same, the procedural issues arising from Defendants' eleventh-hour use of those guidelines persist. Defendants only used the CASII Guidelines in the very first pre-remand denial letter. They then abandoned that framework for the Optum LOC Guidelines, which Plaintiff reasonably relied on in her post-remand appeals. Defendants did not even use the CALOCUS-CASII Guidelines in their first post-remand denial. They only again leveraged the CASII Guidelines in the very last post-remand denial letter, depriving Plaintiff of any opportunity to tailor her arguments to the newly relevant framework. Thus, by doing so, Defendants relied on a new rationale in their final denial, which ultimately renders its entire analysis arbitrary and capricious.

In addition to relying on a new analytical framework, the final post-remand denial letter also failed to follow Judge Jenkin's remand order. Similar to the first post-remand denial letter, the final denial letter failed to specifically address "the many arguments in support of coverage that have been advanced by D.B. in her appeals and in this litigation." ECF No. 71 at 14. For one, the letter did not address Plaintiff's arguments that relied on the Optum LOC Guidelines. It also did not directly address many of the arguments raised in D.B.'s level two pre-remand appeal. In response, Defendants in their briefing highlight the arguments that the reviewer did address. *See* ECF No. 124 at 7–8. But that does not rectify the fact there were many arguments that were left unaddressed.

Finally, the court finds that the final reviewer's engagement with Dr. McCormick's evaluation was also insufficient. After describing Dr. McCormick's recommendations in some detail, the reviewer responds in two sentences. The reviewer states that while Dr. McCormick "reported concerns about [A.B.'s] safety," he "had already shown significant stability and no evidence of safety concerns throughout" his first year of treatment. UNITED_D.B._REMAND_000062. Thus, Dr. McCormick "referenced behaviors that were no longer active concerns." *Id.*

Based on the same reasoning that the court used to find the first reviewer's two-sentence, conclusory response to Dr. McCormick's evaluation insufficient, the court finds the final reviewer's two-sentence response similarly insufficient. Beyond being short, the response (which was based on a retroactive file review) lacked any citations or specific examples from the record to justify the dismissal of Dr. McCormick's recommendations (which resulted from in-depth, personal, and extensive evaluations). *See Dominic W. v. Northern Trust Co. Employee Welfare Benefit Plan*, 392 F. Supp. 3d 907, 917–19 (N.D. Ill. 2019).

Indeed, while the final denial letter contained more specific references to the record as compared to the first post-remand denial letter, it nevertheless continued to include many of the same conclusory statements that were not sufficiently explained or supported in the first post-remand denial letter. *See* UNITED_D.B._REMAND_000064. One might argue that some of the specific references included throughout the final denial letter might provide evidentiary support for the brief response to Dr. McCormick's evaluation or for the other conclusory statements in the letter. However, the court will not mix-and-match portions of the denial letter to put it on firmer footing. ERISA procedural regulations require a "comprehensible statement of reasons" that is backed up with evidentiary support. *D. K. v. United Behav. Health*, 67 F.4th 1224, 1242 (10th Cir.

2023) (quoting *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 635 (10th Cir. 2003)). The final denial letter fell short of that standard.

## III.    Remedy

"Having concluded that [Defendants'] decision was arbitrary, 'we may either remand the case to the plan administrator for a renewed evaluation of the claimant's case or we may order an award of benefits.'" *David P. v. United Healthcare Ins. Co.*, 77 F.4th 1293, 1315 (10th Cir. 2023) (quoting *Weber v. GE Grp. Life Assurance Co.*, 541 F.3d 1002, 1015 (10th Cir. 2008)).

If the record makes it clear that the claimant is entitled to benefits, awarding benefits is appropriate. *David P.*, 77 F.4th at 1315. In contrast, "[g]enerally, '[r]emand is appropriate if the administrator failed to make adequate factual findings or failed to adequately explain the grounds for the decision.'" *Id.* (quoting *Carlile v. Reliance Standard Life Ins. Co.*, 988 F.3d 1217, 1229 (10th Cir. 2021)) (citation modified).

Here, despite the nature and extent of Defendants' failures on remand, the court is unable to definitively find that the A.B.'s treatment was medically necessary. Instead, the failures the court found through its analysis were Defendants' failure to meaningfully engage with A.B.'s medical provider's opinion, their failure to sufficiently explain and support their denial letters, and their failure to follow remand instructions.

Pursuant to the Tenth Circuit's precedent in *David P.*, these failures—or at least the first two—would normally suggest that remand is appropriate. But this case diverges from the norm. As the Tenth Circuit has also held, when a plan administrator makes "clear and repeated procedural errors" in denying a claim, "it would be contrary to ERISA fiduciary principles to mandate a remand and provide an additional 'bite at the apple.'" *D. K. v. United Behav. Health*, 67 F.4th 1224, 1244 (10th Cir. 2023). Just as in *D. K.*, in which there was "a series of denials, appeals for

22

reconsideration, and requests for more information," this case involves violative denial after violative denial *and* a remand process that was not followed and that resulted in further violative denials. *Id.* at 1234. Here, the specter of continued remand opportunities would simply provide Defendants with, in essence, a way to hack the ERISA process. The court accordingly awards benefits to Plaintiffs, finding remand inappropriate.

## IV.    Attorney's Fees

As the Tenth Circuit has described, "ERISA contains a limited fee-shifting provision in § 1132(g). In relevant part, it states: '[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.'" *Stark v. Reliance Standard Life Ins. Co.*, 142 F.4th 1252, 1258 (10th Cir. 2025). "'A fee claimant need not be a prevailing party to be eligible for an award of attorney's fees and costs under ERISA.' Instead, a district court has the discretion to award fees 'as long as the fee claimant has achieved some degree of success on the merits.'" *Lightfoot v. Principal Life Ins. Co.*, 547 F. App'x 864, 866 (10th Cir. 2013) (unpublished) (citation modified).

District courts may consider five factors in exercising their discretion: "(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of fees; (3) whether an award of fees would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Id.* But the Tenth Circuit has also ruled that "under § 1132(g), attorney's fees are unavailable for pre-litigation administrative proceedings." *Stark*, 142 F.4th at 1258.

The court exercises its discretion to award attorney's fees and costs to Plaintiff for both the pre-remand and post-remand litigation. Here, Plaintiff has achieved success on the merits—the

23

court is granting (for the second time) their motion for summary judgment based on Defendants' refusal to engage in meaningful dialogue with Plaintiff and to conduct a full and fair review of Plaintiff's claim. The court also finds that an award of attorney's fees would serve an important deterrence function with respect to the ERISA process. Requiring plan administrators to pay attorney's fees after engaging in violations of the ERISA process will incentivize plan administrators to engage in a full and fair review in the first instance.

In addition, "[u]nder ERISA, '[p]rejudgment interest is . . . available in the court's discretion.'" *Weber v. GE Grp. Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (citing *Benesowitz v. Metropolitan Life Ins. Co.*, 514 F.3d 174, 176 (2d Cir. 2007)); *see also Allison v. Bank One–Denver*, 289 F.3d 1223, 1243 (10th Cir. 2002) ("Prejudgment interest is appropriate when its award serves to compensate the injured party and its award is otherwise equitable."). The court also awards prejudgment interest to Plaintiff.

## V.    The Parity Act Claim

Finally, the court briefly addresses the parties' arguments relating to the Parity Act claim. In Judge Jenkin's order, he denied summary judgment on the claim "as moot, subject to renewal, if necessary, at a later stage of these proceedings." ECF No. 71 at 14 (citing *Theo M. v. Beacon Health Options*, 631 F. Supp. 3d 1087, 1111 (D. Utah 2022)).

Plaintiff has not renewed this claim again post-remand. *See* ECF No. 119 at 23 ("[T]he Plaintiff . . . indicated that Plaintiff would only revisit the MHPAEA issue if she was not successful on her denied benefits claim, or otherwise received inadequate relief that could only be obtained in equity."); ECF No. 106 at 3 ("Plaintiff does not intend to brief that issue until this phase of the litigation is resolved."); ECF No. 118 at 3 ("Plaintiff has not moved for summary judgment on their Second Cause of action under [the Parity Act].").

24

Though the parties have briefed the issue based on Defendants' motion for summary judgment, the court declines to rule on the unrenewed Parity Act claim. After all, "[c]ourts in this District have repeatedly declined to resolve Parity Act arguments 'when a denial of benefits decision is either remanded or reversed.'" *H.R. v. United Healthcare Ins. Co.*, No. 2:21-CV-00386-RJS-DBP, 2024 WL 3106468, at *21 (D. Utah June 24, 2024).

## CONCLUSION AND ORDER

For the above reasons, the court hereby ORDERS:

1. Plaintiff's motion for summary judgement is GRANTED. ECF No. 106. Defendants are ordered to pay benefits, attorney's fees, costs, and prejudgment interest for Plaintiff's claim.

2. Defendants' motion for summary judgment is DENIED. ECF No. 104.

Signed March 27, 2026.

BY THE COURT

Jill N. Parrish
United States Chief District Judge